UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14 CR 82 SNLJ (ACL) |
| | ) |
| MICHAEL E. POUNDS, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned is the Defendant's Motion to Suppress Evidence and Statements. (Doc. 36.)

Pounds argues that the search warrant that was executed at his residence was not supported by probable cause, because the Confidential Source (CS) was not identified as being "reliable." He further alleges that there was no independent police corroboration of the information provided by the CS. Pounds also argues that the manner in which the search warrant was executed was unreasonable and that the property seized from his residence was not described with particularity in the warrant. Finally, Pounds alleges that any of his statements following the execution of the search warrant were taken in violation of his constitutional rights. The Government filed a response in opposition to Pounds' claims. (Doc. 37.)

At the conclusion of the evidentiary hearing (Doc. 41), both parties offered oral argument concerning the issues raised.

In consideration of the pleadings identified above, as well as all exhibits admitted into evidence and oral argument, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's Motion to Suppress Evidence and Statements be denied.

## I. Findings of Fact

On August 5, 2014, ATF Special Agent Ryan Becker applied for a search warrant to search Defendant Michael E. Pounds' residence. Agent Becker prepared an Affidavit (Gov't. Ex. #1) consisting of slightly more than two pages and presented it to the undersigned. The Affidavit explained that Agent Becker had been conducting an investigation that led him to believe that Pounds possessed controlled substances, as well as a firearm and ammunition in his residence. Based on the information Agent Becker had gathered, he believed there was probable cause to support the issuance of a search warrant for items related to drug trafficking and unlawful possession of a firearm (*i.e.,* methamphetamine, items of drug paraphernalia, firearms).

The contents of Agent Becker's Affidavit summarized information that had been received from reviewing Pounds' criminal history, interviewing a confidential source, and speaking with the Captain of the local police department. Agent Becker stated that Pounds had a prior federal conviction for manufacturing methamphetamine, as well as a State conviction for distribution of methamphetamine.

According to the information contained in Agent Becker's Affidavit, the CS claimed to have known Pounds for more than ten years. The CS also indicated that on August 3, 2014, the CS purchased one quarter ounce and one eighth ounce of

methamphetamine from Pounds. The CS stated that Pounds was in possession of approximately two ounces of methamphetamine on August 3, 2014, and that he/she observed Pounds retrieve the methamphetamine from a dresser in the master bedroom. The CS also reported that Pounds had a set of digital scales. In addition, the CS admitted to purchasing controlled substances from Pounds on six to seven occasions over the prior month. The CS stated that Pounds had lived in the residence where the two ounces of methamphetamine was observed for more than one year. The CS also relayed other details about Pounds such as that he lived alone, worked for a particular trucking company, and the times Pounds typically departed for and returned from work.

      Within the Affidavit, Agent Becker explained that he had spoken with a police officer the day after receiving the information from the CS. The police officer told Agent Becker that he had received information from three separate sources that Pounds had been selling methamphetamine out of his residence, where Pounds had lived for more than one year. The officer also confirmed Pounds' employer was the same as reported by the CS.

      The Affidavit revealed that the CS reported that he/she also observed a blue steel revolver with wood grips along with boxes of ammunition in a curio cabinet located in the kitchen of Pounds' residence.

      Both the CS and the police officer described the interior of Pounds' residence in the same manner. Their descriptions indicated that upon entering the residence through the front door, the living room was located to the left and the kitchen area was to the right. They also reported that Pounds drove a green Chevy truck.

Agent Becker signed the Affidavit before the undersigned on August 5, 2014 and the undersigned issued the Search Warrant (Gov't. Ex. #2) at 1:04 p.m.

The Search Warrant was executed around 9:20 p.m., the same day it was received. When the officers arrived, they knocked and announced their presence at the storm door, which was the only door that was closed. No one came to the door and the officers ultimately gained entry by prying the storm door open. Special Agent Becker could hear water running in the bathroom and saw Pounds moving his head up and down in the bedroom.

Initially, Agent Becker believed that someone was trying to destroy controlled substances in the bathroom, but soon determined that Pounds had attempted to swallow a large plastic package and that Pounds was choking on it. Agent Becker requested that someone get a trash can, because it appeared that Pounds was likely to throw up since the plastic package was gagging him. Agent Becker made multiple requests for Pounds to open his mouth, but Pounds disregarded the requests. Pounds began making gurgling noises, his eyes were bloodshot, and his face was extremely red. Agent Becker feared that Pounds was going to choke to death, so he asked another officer to assist Pounds with removing the item that was in Pounds' throat. While holding Pounds' head still, Agent Becker directed Pounds not to bite the other officer. The officer reached into Pounds' mouth and was able to recover the plastic bag containing methamphetamine that had been obstructing Pounds' airway. The bag was covered in mucus and blood. (Gov't. Ex. #3.) A later examination of the contents of the package revealed that it was a

substance containing more than thirteen grams of methamphetamine and that there was blood on some of the shards of methamphetamine.  (Gov't. Ex. #4.)

After the package of methamphetamine was removed from Pounds' throat, Pounds recovered quickly.  He did not appear to be ill or intoxicated.  Although paramedics were available on the scene to treat Pounds, he refused to be treated.  Agent Becker read the *Miranda* warning to Pounds from a printed card and Pounds indicated that he understood his rights.  Pounds admitted the substance in the plastic package was methamphetamine and stated that he wanted to speak with Agent Becker in private.  During that conversation, Pounds stated that he was simply a drug user, but later admitted to selling methamphetamine and that he usually acquired a half ounce at a time from a source in Arkansas.  In regard to guns in the residence, Pounds relayed that he did not have any guns, but that an individual who had stayed at Pounds' residence typically had a gun.

Agent Becker stated that Pounds was not forced to make a statement nor was he threatened, and no promises were made to him to get him to make a statement.  He also explained that Pounds did not ask for an attorney.  Pounds was not arrested at the completion of the search.

During the suppression hearing, Agent Becker testified that the purchases the CS made from Pounds were not controlled purchases rather the CS simply contacted Agent Becker and relayed that he/she had purchased methamphetamine from Pounds.  While purchasing drugs is illegal conduct, Agent Becker did not believe that fact negatively impacted the CS' reliability.  Although the Affidavit did not specifically identify the CS as a "reliable informant," Agent Becker stated that the CS had never proven to be

unreliable, except for the fact that the CS missed a court date on one occasion. Following that incident, ATF discontinued use of the CS for a period of time. Additionally, Agent Becker corroborated information provided by the CS by talking to a local police officer and confirming where Pounds worked. While the CS and the officer described Pounds' truck as a Chevy rather than a GMC, Agent Becker believed that GMC makes Chevy and that the GMC and Chevy trucks look identical. Agent Becker agreed that digital scales, a gun, and ammunition were not found at Pounds' residence even though the CS had reportedly observed said items in Pounds' residence. This fact did not negatively impact Agent Becker's assessment of the CS' reliability. Agent Becker noted that the layout of the residence was exactly as the CS had described and that Pounds did in fact have methamphetamine. Agent Becker further testified that even though digital scales were not found during the search, Pounds may have had a hiding place for the scales that the officers did not find. Furthermore, Agent Becker observed additional evidence he believed was related to drug distribution during the search, including razor blades and remnants of plastic bags (i.e. the corners had been removed). Finally, Agent Becker clarified that the CS did not say that the gun that was observed in Pounds' residence belonged to Pounds; he also noted that Pounds admitted another individual had possessed a firearm while in his residence.

## II. Conclusions of Law

### II.A. The Search Warrant was supported by probable cause.

Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place.

*See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Whether probable cause has been established involves the practical common sense evaluation of the totality of the circumstances. *Gates*, 462 U.S. at 238.

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States*, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232. Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* at 632. All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be searched. *Gates, supra*. Also, affidavits should not be read in a hypertechnical manner. *See United States v. Ventresca*, 380 U.S. 102 (1965).

An examination of the information contained in the Affidavit supports that there was sufficient probable cause to search Pounds' residence for any evidence related to the distribution of controlled substances and the unlawful possession of a firearm. The Affidavit revealed that two days prior to the application for the Search Warrant, a CS

"who had provided information in the past that [ ] resulted in the seizure of firearms and controlled substances" (Gov't. Ex. #1 at ¶ 8) purchased a total of approximately 21 grams of methamphetamine from Pounds and observed approximately two ounces of methamphetamine on Pounds' dresser. The CS further admitted to having purchased controlled substances from Pounds at least six times within the previous thirty days. The CS also reported having observed a firearm and ammunition in a particular location within Pounds' residence. The Affiant also stated that a conversation with a local law enforcement officer confirmed the CS' description of the interior of Pounds' residence, where Pounds worked, that Pounds drove a truck, that Pounds had lived in the residence for more than one year, and that at least three separate sources advised the officer that Pounds was selling methamphetamine out of his residence.

Given all of the above, the undersigned concludes that there was at least a "fair probability" that items relating to the distribution of methamphetamine and unlawful possession of a firearm would be found within Pounds' residence. Therefore, probable cause existed to search Pounds' residence and his Motion to Suppress Evidence should be denied.

**II.A.i. Information contained in the Affidavit established reliability of CS.**

Pounds also complained that the Affidavit did not "at any point, state that the informant is reliable. The word 'reliable' does not appear anywhere in the four corners of the affidavit." (Doc. 36 at 4.)

"The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." *United States*

*v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).  Absent indicia of an informant's reliability, courts insist that search warrant affidavits contain substantial police corroboration, which "may be established by a police-monitored controlled buy…." *United States v. Hawkins*, 278 Fed.Appx. 629, 635 (8th Cir. 2008).  *See also United States v. Neal*, 528 F.3d 1069, 1073-74 (8th Cir. 2008) (proven reliability of informant was supported by a single controlled buy from defendant and description of firearms informant observed in defendant's residence).  The undersigned notes that a controlled buy is just one example of how the police might adequately corroborate and informant's reliability.

Furthermore, it is well established that:

> [a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.  That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct.

*United States v. Harris*, 403 U.S. 573, 583-84 (1971); *see also United States v. Pennington*, 287 F.3d 739, 742 (8th Cir. 2002) (fact that an informant implicated himself in criminal activity to the police supports a finding of probable cause to search).  In essence, an informant's admissions regarding involvement in recent and continued illicit activity has the effect of enhancing the informant's credibility and reliability rather than deflating it.

Although Agent Becker did not characterize the CS as a "reliable confidential informant," the information contained within the Affidavit established that the information provided by the CS was reliable.  The CS admitted to purchasing

methamphetamine from Pounds two days prior to Agent Becker's application for the Search Warrant, the CS also admitted purchasing methamphetamine from Pounds at least a half dozen times during the prior month, and the CS provided a detailed description of the interior of Pounds' residence, as well as specific items the CS observed in the residence.

Importantly, Agent Becker did not rely on the CS' statement alone. Agent Becker corroborated the information provided by the CS by communicating with a local police officer who stated that he received reports from at least three different sources that Pounds was selling methamphetamine from his residence, the layout of the interior of Pounds' residence, where Pounds worked, and how long Pounds had lived in the residence.

The fact the CS did not appear for a court appearance in a case related to his prior cooperation with ATF and that the CS continued to participate in illicit drug activity does not result in a conclusion that the CS is unreliable as urged by Pounds.

The CS' admitted involvement in unauthorized criminal activity, his prior record of providing "information in the past that [ ] resulted in the seizure of firearms and controlled substances," as well as the independent corroboration by a local police officer of several facets of the information provided by the CS, was sufficient for the CS' information that was relayed in the Affidavit to be deemed reliable.

**II.A.ii.  Good Faith**

Further, while evidence obtained as a result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers

relying in objective good faith on a defective search warrant. *See United States v. Leon*, 468 U.S. 897, 920, 921 (1984). There are four circumstances under which the *Leon* good faith exception does not apply. They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) " the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers cannot reasonably presume it to be valid."

*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007). *See also Leon*, 468 U.S. 897 at 832.

Based on the above, the undersigned concludes that even if the Search Warrant had been invalid, the good faith exception would apply in this case. First, Pounds does not allege that the magistrate judge was misled by any misstatements made in the Affidavit, that the magistrate judge wholly abandoned her judicial role, or that the search warrant was facially deficient. As to whether or not the Affidavit was so lacking in indicia of probable cause or was so facially deficient that neither the executing officers nor the judge could believe it was valid, the undersigned concluded in the prior section that the information contained in the Affidavit was more than sufficient to meet the probable cause requirement. Considering the information contained in the entire Affidavit, it was reasonable for both the officer and the judge to believe that the evidence sought would be found at Pounds' residence. Further, the officer acted reasonably in obtaining the warrant, and taking the necessary steps to present the warrant application to

the magistrate judge. Therefore, the undersigned concludes that the Warrant and Affidavit were also sufficient under *Leon* standards.

**II.B. The search of the residence was conducted in a reasonable manner.**

Without making a specific factual allegation, Pounds contends that the search of his residence "was not conducted in a reasonable manner. . ." (Doc. 36 at ¶ 5.) There is nothing in the record of the case to support this allegation.

Missouri law states: "The search shall be conducted in a reasonable manner. The search may be made at night if making it during the day is not practical." R.S.Mo. § 542.291.1. More significantly, the Eighth Circuit has held that night searches are not per se unconstitutional and thus "suppression is not automatic" if Rule 41 is violated. *United States v. Schoenheit*, 856 F.2d 74, 77 (8th Cir. 1988). Instead the consideration is whether the "defendant is prejudiced or reckless disregard of proper procedure is evident. *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir. 1994). The Search Warrant in this case authorized the search to be conducted between 6 a.m. and 10 p.m.

In this case, Agent Becker secured a valid Search Warrant prior to searching Pounds' residence. Upon arriving at Pounds' residence at approximately 9:20 p.m., to execute the Warrant, the officers repeatedly announced their presence before prying the storm door open to gain entry. Once inside the residence, the officers confirmed there was water running in the bathroom and that Pounds was in his bedroom. Pounds appeared to be choking on something and as if he might throw up. The officers first requested Pounds open his mouth and ultimately had to remove a bag of methamphetamine from deep inside Pounds' throat thereby saving his life. Pounds

offered no evidence to suggest there was anything unreasonable regarding the manner in which the search was conducted.

The undersigned finds that the search was conducted in a reasonable manner. The undersigned further finds that Pounds was not prejudiced by the manner in which the search was executed nor was there evidence of reckless disregard for proper procedure.

**II.C. The items seized from the residence were listed with particularity in the Warrant.**

Pounds alleged in his suppression motion and during the hearing that items seized were "not listed with particularity in the Search Warrant." (Doc. 36 at ¶¶ 5 and 11.a.) The undersigned disagrees.

The Fourth Amendment prohibits general search warrants and requires a description, with particularity, of the items to be seized. *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). The Warrant Clause's particularity requirement can be satisfied by including the items to be seized in an affidavit or attachment that is adequately referenced in the search warrant. *United States v. Gamboa*, 439 F.3d 796, 807 (8th Cir. 2008).

In this case, a list of the items to be seized was attached to the Search Warrant and identified as Exhibit A. *See* Gov't. Ex. #2. The items to be seized were described with particularity (*i.e.,* narcotics, records regarding drug sales, paraphernalia for the packaging and distribution of drugs, money from the proceeds of drug sales, firearms).

The undersigned finds that items seized from Pounds' residence were listed with particularity in the Search Warrant.

**II.D. The Defendant's Statements are admissible at trial.**

Pounds also argues that any statements he made should be suppressed although he does not identify specifically in what way any statement was taken from him in violation of his constitutional rights. The undersigned finds that Pounds' statements were taken in accordance with his constitutional rights.

Generally, statements to law enforcement officers are subject to those procedures set out in *Miranda v. Arizona*, 384 U.S. at 436. The law enforcement officer must inform the defendant of his or her rights prior to questioning. *Id.* at 444. The *Miranda* rights, however, are required only when the suspect is in custody and subjected to interrogation. *Id.* at 477-78. Custodial interrogation means questioning initiated by the law enforcement officer after the suspect has been taken into custody. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Voluntary statements by a suspect not being questioned are, of course, admissible at trial. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Moreover, if, after being given *Miranda* warnings, a defendant agrees to make a statement, the government must show that the waiver was voluntary, knowing, and intelligent for the statement to be admissible. *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986); *North Carolina v. Butler*, 441 U.S. 369, 375-76 (1979); *Miranda*, 384 U.S. at 475. When a defendant asserts his right to speak with an attorney, a law enforcement officer must cease all interrogation until counsel is provided or the defendant subsequently waives this right. *David v. United States*, 512 U.S. 452, 458 (1994); *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990); *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

It is undisputed that Pounds was properly advised of his rights to remain silent and to counsel before any custodial interrogation took place. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). In addition, the unchallenged testimony at the suppression hearing was that Pounds did not ask to speak with an attorney, but instead asked to speak with Agent Becker privately.

There is convincing evidence that Pounds knew and understood his rights, and voluntarily answered questions after he was given the *Miranda* warning on August 5, 2014. Pounds was not a stranger to the legal system in that he had two prior drug related convictions before the Search Warrant that is the subject of the instant case was executed. The questioning of Pounds was relatively brief and Pounds made the statements to a specific officer in private. Although Pounds had nearly choked to death on a package of methamphetamine before the interview, by the time the interview started Pounds had recovered and refused medical treatment. Furthermore, Pounds was not arrested following his statement. Finally, Pounds offered no testimony to rebut that of Agent Becker or Officer Altice concerning the circumstances leading to his incriminating statements, and he does not contend that either of the officers improperly induced him to speak after the warnings were given.

The undersigned finds that Pounds made an intelligent and voluntary waiver of his rights prior to making the post-arrest statements, and further finds his admissions were made voluntarily. Pounds' Motion to Suppress Statements should be denied.

### III. Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Evidence and Statements (Doc. 36) be **denied**.

Further, the parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of January, 2015.